UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER CARSON
SMITH,

        Plaintiff,

v.

CHAD E. MARKWELL, *et al.*,

        Defendants.
_____/

Case No. 2:23-cv-11067
District Judge Jonathan J.C. Grey
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY MDOC DEFENDANTS LESTER, MIKEL, AND OAKS'S MOTION TO DISMISS AND TO TRANSFER VENUE (ECF No. 17)

**I.**    **RECOMMENDATION**: The Court should **DENY** MDOC Defendants Lester, Mikel, and Oaks's motion to dismiss and to transfer venue (ECF No. 17).

**II.**    **REPORT**

    **A.**    **Background**

Christopher Carson Smith is currently located at the Michigan Department of Corrections (MDOC) Cooper Street Facility (JCS). (ECF No. 25, PageID.206.) On May 5, 2023, while located at the MDOC's Central Michigan Correctional Facility (STF), Plaintiff filed three lawsuits in the Eastern District of Michigan. The first, which was filed against several STF food-related employees, was dismissed on November 3, 2023. *See* Case 2:23-cv-11065-MAG-EAS. The

second, which was filed against two STF mailroom employees and an STF prison counselor, was settled after a mediation conference and, accordingly, dismissed with prejudice on October 18, 2023. *See* Case 4:23-cv-11066-SDK-PTM.

### B. Instant Case

The third, which is the case presently at bar, concerns Plaintiff's alleged efforts – in 2022 at the MDOC's Lakeland Correctional Facility (LCF) and STF – to submit and execute a "prisoner advance directive – do not resuscitate order." (ECF No. 1, PageID.8-13.) *See also* MDOC PD 03.04.107 ¶¶ N-Q (effective Jan. 3, 2022). As a matter of background, MDOC policy provides that "[o]nce initiated, emergency first aid shall continue until . . . [,]" for example, "[a] QHP [qualified health professional] verifies an executed Prisoner Advance Directive form (CHJ-233) exists." MDOC PD 03.04.125 ¶ I(2) (effective Nov. 13, 2023).

Alleging violations of the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), Plaintiff sues eight individuals: (1) Chad E. Markwell, an STF Chaplain; (2) Magen Oaks, an STF Health Unit Manager (HUM); (3) Nathan Mikel, a Lakeland Correctional Facility (LCF) HUM; (4) Connie Lester, an LCF Registered Health Information Technician (RHIT); (5) Heidi Washington, the MDOC Director; (6) Grand Prairie Healthcare Services (GPHS); (7) GPHS employee Peter Sices, M.D.; and, (8) GPHS employee Margaret Ouellette, P.A. (ECF No. 1, PageID.2-6.)

Plaintiff alleges there are "no physical injuries[,]" (*id.*, PageID.14); nonetheless, he seeks monetary damages (*id.*), as well as "class action approval" and "the appointment of counsel to represent the class[,]" (*id.*, PageID.13 ¶ 13.)[1]

### C. Pending Motions

Currently before the Court is MDOC Defendants Lester, Mikel, and Oaks's August 16, 2023 motion, which seeks dismissal of claims arising out of the Eastern District of Michigan, *i.e.*, STF, and transfer of venue for claims arising out of the Western District of Michigan, *i.e.*, LCF. (ECF No. 17.)[2] Plaintiff has filed a timely response (ECF Nos. 18, 22), the movants have filed a reply (ECF No. 23), and the motion is ready for decision.

---

[1] Plaintiff has also been a party to cases in the Western District of Michigan. *See, e.g.*, *Smith v. Berghuis*, No. 1:07-CV-1179 (W.D. Mich.) (habeas corpus); *Smith v. Dawdy*, No. 1:23-CV-575 (W.D. Mich.) (prisoner civil rights).

[2] MDOC Defendants Washington and Markwell are not parties to the motion currently before the Court. Therefore, this report does not address Plaintiff's claims against them (*see* ECF No. 1, PageID.12-13 ¶¶ 6, 8.1, 8.2), nor does it address Plaintiff's assertion that Washington "cannot be asked to change a policy" per MDOC PD 03.02.130 ¶ J. (*Id.*, PageID.17.) *See also* MDOC PD 03.02.130 ¶ J(8) ("If a prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.105 "Prisoner Housing Unit Representatives/Warden's Forum."). Similarly, because the GPHS Defendants (GPHS, Ouellette, and Sices) are not parties to this motion, Plaintiff's claims against them (*see* ECF No. 1, PageID.11 ¶ 4, 13 ¶¶ 9, 10) are not addressed in this report.

3

### D. Standards

MDOC Defendants Lester, Mikel, and Oaks bring their motion under Fed. R. Civ. P. 12(b)(3), which concerns "improper venue." (ECF No. 17, PageID.57.) However, to the extent Plaintiff seeks dismissal of the STF-related claims for failure to exhaust as required by 42 U.S.C. § 1997e(a), the motion will be addressed under Fed. R. Civ. P. 56. *See, e.g.*, *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023); *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022).

### E. Discussion

#### 1. Whether the Court should transfer venue as to Plaintiff's LCF (Branch County, Michigan) related claims?

LCF is located in Branch County, Michigan, which is within the Western District of Michigan, Southern Division. 28 U.S.C. § 102(b)(1). As to the MDOC Defendants who filed the motion to transfer, Plaintiff alleges that on April 20, 2022 at LCF, MDOC Defendant Lester "refused to process and file the Do Not Resuscitate Order that was signed by Plaintiff with two witnesses . . . [,]" allegedly because "Plaintiff had to meet with a facility physician." (ECF No. 1, PageID.9-10 ¶ 1.) Plaintiff also alleges that, seemingly on May 25 or 26, 2022 at LCF, MDOC Defendant Mikel "stated Plaintiff was unwilling to follow the process of Policy Directive 03.04.107 . . . ." (ECF No. 1, PageID.8 ¶ B, 10 ¶ 3.)

As the movants correctly note, "28 U.S.C. § 1391(b) provides that a civil action may be brought in a judicial district 'in which any defendant resides,' or 'in

which a substantial part of the events or omissions giving rise to the claim occurred.'" (ECF No. 17, PageID.61.) They argue that "the only basis for venue in the Eastern District under 28 U.S.C. § 1391(b) are the claims which arose out of STF[,]" and that the LCF events "occurred more than three months before the STF events and involved different defendants," suggesting that the related claims do not arise out of "the same transaction, occurrence, or series of transactions or occurrences[,]" Fed. R. Civ. P. 20(a)(2), and, consequently, should be severed under Fed. R. Civ. P. 21. (ECF No. 17, PageID.74-75.) Alternatively, they suggest transferring the matter to the Western District if the Court "concludes that a transfer in lieu of a dismissal is in the interest of justice[,]" noting that the claims arising out of LCF occurred in the Western District and "documentary evidence and witnesses to the LCF incidents are more likely to be found in the Western District." (*Id*., PageID.75-76.)

Yet, in his verified complaint, Plaintiff requests that, "for the sake of multiple litigations, one in [the] Eastern District and on[e] in [the] Western District," the claims related to LCF and STF "be joined into one litigation at Plaintiff's current location [*i.e.*, STF] as they both deal with the same Do Not Resuscitate Order document." (ECF No. 1, PageID.13 ¶ 12.)

Considering the factors of "the weight accorded the plaintiff's choice of forum," and "trial efficiency and the interests of justice, based on the totality of the

5

circumstances[,]" *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)), Plaintiff's response that his "choice of venue is proper" is persuasive, because he points out that "Eastern District was the last of a series of occurrences and where the medical Do Not Resuscitate Order was ultimately shredded[,]" and also asserts that "the occurring incidents were more at STF than at LCF." (ECF No. 22, PageID.175-176.)

Conversely, whatever debate exists between the parties as to which venue hosted more of the events at issue, as will be seen below, the Court is not persuaded by the argument that "Smith's claims arising out of STF are subject to dismissal for failure to exhaust . . . ." (ECF No. 23, PageID.193.) Accordingly, it is appropriate for Plaintiff's LCF-related claims to remain in the Eastern District.

> **2. Whether the Court should dismiss Plaintiff's claims arising out of STF (Gratiot County, Michigan) for failure to exhaust?**

Plaintiff was transferred to STF on July 28, 2022. (ECF No. 1, PageID.10-11 ¶ 4.) STF is located in Gratiot County, Michigan, which is within the Eastern District of Michigan, Northern Division. 28 U.S.C. § 102(a)(2). As to the MDOC Defendants who filed the matter at bar, Plaintiff alleges that:

- On September 13, 2022 at STF, after MDOC Defendant Oaks (and non-movant MDOC Defendant Markwell) "had already conspired to deny Plaintiff's religious declaration . . . [,]" Plaintiff was informed, "just want it clear that you currently are

6

      NOT a DNR and in the event that you have a medical emergency, we will do all medical intervention necessary to preserve your life." (ECF No. 1, PageID.12 ¶ 6.)

- In December 2022, Plaintiff was "verbally told that he had to go to the East Side Healthcare to speak with Defendant Oaks[,]" at which time Oaks "verified that the original document had been shredded and that Plaintiff would have to complete a new Do Not Resuscitate Order." Plaintiff retrieved a copy of the original and gave it to Defendant Oaks, who "stated that a copy was being made for the Office of Legal Affairs." (*Id.*, ¶ 7.)[3]

- Non-movant MDOC Defendant Markwell "had no authority or policy authorization to conspire with Defendant Oaks to require Plaintiff to submit to a meeting with a Defendant [GPHS] employee." (*Id.*, PageID.12-13 ¶ 8.2.)

Without reference to any particular Defendant, Plaintiff contends he "has not been informed in writing that the Office of Legal Affairs approved the faxed copy of the Do Not Resuscitate Order." (*Id.*, PageID.13 ¶ 11.)

### b.  42 U.S.C. § 1997e ("Suits by prisoners")

Defendants argue that Plaintiff's "claims arising out of STF are subject to dismissal because he failed to exhaust those claims." (ECF No. 17, PageID.66.) "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

[3] Plaintiff claims that, at the same time, his Step III appeal "was in the hands of the grievance section of the Office of Legal Affairs." (ECF No. 1, PageID.12 ¶ 7.)

exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Nonetheless, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016).

### c.     MDOC prisoner Step III grievance report

The MDOC's grievance procedure explains that "[c]omplaints filed by prisoners regarding grievable issues . . . serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ¶ C (Mar. 18, 2019). (ECF No. 17-2, PageID.80.) MDOC Defendants Lester, Mikel, and Oaks argue that Plaintiff's Step III Grievance Report reveals "only one" grievance relevant to Plaintiff's claims. (ECF No. 17, PageID.64-65.)

### d.     STF-22-09-0752-28e (12z)

Plaintiff completed a Step I grievance, STF-22-09-0752-28e (12z), which concerned a September 13, 2022 incident and mentioned movant MDOC Oaks, as

8

well as non-movants MDOC Defendant Markwell and GPHS Defendant Sices. (ECF No. 17-3, PageID.113.) It was received at Step I on September 15 or 22, 2022. (*Id*., PageID.95; ECF No. 22, PageID.189.) An October 5, 2022, Step I response indicates that Plaintiff "has [a] Durable Power of Attorney on file signed on [June 29, 2021][,]" but, at an August 26, 2022 medical provider appointment, "it was explained to him that he did not have a Do Not Resus[c]itate on file[,]" and "the Grievance declined completing an[] advanced directive with a Do Not Resus[c]itate status." (ECF No. 17-3, PageID.112.)

Plaintiff completed a Step II appeal. (ECF No. 17-3, PageID.111.) It appears to have been received at Step II on October 17, 2022. (ECF No. 22, PgaeID.189.) By an MDOC Memorandum dated November 2, 2022, he was informed: "You should be provided a Step II response no later than [December 5, 2022]. If you have not received a response by this date, you may submit our Step III appeal to the Director's Office." (ECF No. 22, PageID.182.)

Plaintiff completed a Step III appeal, which begins by stating, "[n]o response given by the extension date of [December 5, 2022]." (ECF No. 17-3, PageID.111.) Plaintiff apparently sought postage disbursement on December 7, 2022 (ECF No. 22, PageID.180). Plaintiff also claims, within his verified response to the motion at bar, that he "sent a kite inquiring about the grievance in question . . . .," and his kite was stamped received by the Warden's Office on December 9, 2022. (ECF

9

No. 22, PageID.175, 178, 184.) Plaintiff seems to contend that "staff member T. Sikon responded that the grievance was sent back to Plaintiff's new housing location," but not until after it had been "returned to Plaintiff's lock location on the grievance form." (*Id*., PageID.175; *see also* ECF No. 17-3, PageID.111.) Plaintiff's Step III appeal in STF-0752 was received at Step III on January 6, 2023. (ECF No. 22, PageID.95.) However, on February 8, 2023, it was rejected at Step III, because it was missing a Step II response. (ECF No. 17-3, PageID.110.)

### e. Reason for rejection

The MDOC movants' argument that "Smith did not exhaust any claims against MDOC Defendants[,]" is based on Plaintiff having "filed only one grievance arising out of STF which is relevant to his claims," *i.e.*, STF-0752. (ECF No. 17, PageID.71-73.) More specifically, they suggest exhaustion of this grievance was improper, because it was rejected at Step III as missing a copy of the Step II response. (*Id*.)

However, Plaintiff convincingly illustrated why the failure to include a copy of his Step II response was through no fault of his own. To begin, Plaintiff signed his complaint "under the penalty of perjury . . . [,]" (ECF No. 1, PageID.13, 20); thus, it may be treated as an unsworn declaration. *See* 28 U.S.C. § 1746. In the exhaustion section of Plaintiff's complaint (ECF No. 1, PageID.15-17), when asked to discuss his efforts at appealing grievances, Plaintiff explained that "[a]ll

three steps are complete on two grievances[,]" and he "was denied filing the third grievance" for being "on modified access." (ECF No. 1, PageID.17.) More to the point, and seemingly with reference to STF-0752, Plaintiff explains:

> Plaintiff was returned a Step 2 response the day it was due and because Plaintiff was moved to another unit for hearing impairments, the facility mail held up the response but Plaintiff sent the goldenrods to Step 3 and was rejected for not having those responses.

(ECF No. 1, PageID.17.)

In other words, notwithstanding the MDOC's December 5, 2022 deadline by which to provide Plaintiff with a Step II response (*see* ECF No. 17-3, PageID.111; ECF No. 22, PageID.182), it seems that, at the time Plaintiff initiated his Step III appeal in early December 2022, Plaintiff had not yet received the Step II response. (*See also* ECF No. 22, PageID.173-175.) As best the Court can tell, the actual date of the MDOC's Step II response is not within the record. To complicate matters, MDOC Defendants Lester, Mikel, and Oaks's reply does not comment on the date of the Step II response. (*See* ECF No. 23, PageID.192-193.) Accordingly, Plaintiff's STF-related claims should not be dismissed on the basis that STF-0752 was *improperly* exhausted.

### D.   Conclusion

As set forth in detail above, Defendants are not "entitled to judgment as a matter of law[,]" because there exists a "genuine dispute as to any material fact . . .

11

[,]" Fed. R. Civ. P. 56(a), namely whether Plaintiff has exhausted his *available* administrative remedies in accordance with 42 U.S.C. § 1997e(a). As a result, MDOC Defendants Lester, Mikel, and Oaks are not entitled to dismissal of the claims against them arising out of STF (*see* Section II.C.2); furthermore, it is appropriate for Plaintiff's LCF-related claims to remain in the Eastern District (*see* Section II.C.1). Accordingly, the Court should **DENY** MDOC Defendants Lester, Mikel, and Oaks's motion to dismiss and to transfer venue (ECF No. 17).

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 12, 2024

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE