UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER CARSON SMITH,

        Plaintiff,

v.

CHAD E. MARKWELL, *et al.*,

        Defendants.

_____/

Case No. 2:23-cv-11067
District Judge Jonathan J.C. Grey
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY MDOC DEFENDANT MIKEL'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 40)

**I.**    **RECOMMENDATION**: The Court should **DENY** MDOC Defendant Mikel's motion for summary judgment on the basis of exhaustion (ECF No. 40).

**II.**    **REPORT**

    **A.**    **Background**

Christopher Carson Smith is currently located at the Michigan Department of Corrections (MDOC) Cooper Street Facility (JCS). (ECF No. 58, PageID.776.) As a matter of background, MDOC policy provides that "[o]nce initiated, emergency first aid shall continue until . . . [,]" for example, "[a] QHP [qualified health professional] verifies an executed Prisoner Advance Directive form (CHJ-233) exists." MDOC PD 03.04.125 ¶ I(2) (effective Nov. 13, 2023). On May 5,

1

2023, while located at the MDOC's Central Michigan Correctional Facility (STF), Plaintiff filed the instant lawsuit in the Eastern District of Michigan, concerning Plaintiff's alleged efforts – in 2022 at the MDOC's Lakeland Correctional Facility (LCF) and STF – to submit and execute a "prisoner advance directive – do not resuscitate order." (ECF No. 1, PageID.8-13.) *See also* MDOC PD 03.04.107 ¶¶ N-Q (effective Jan. 3, 2022).

Alleging violations of the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), Plaintiff sues eight individuals: (1) Chad E. Markwell, an STF Chaplain; (2) Magen Oaks, an STF Health Unit Manager (HUM); (3) Nathan Mikel, a Lakeland Correctional Facility (LCF) HUM; (4) Connie Lester, an LCF Registered Health Information Technician (RHIT); (5) Heidi Washington, the MDOC Director; (6) Grand Prairie Healthcare Services (GPHS); (7) GPHS employee Peter Sices, M.D.; and, (8) GPHS employee Margaret Ouellette, P.A. (ECF No. 1, PageID.2-6, 14.)

Plaintiff alleges there are "[n]o physical injuries[,]" (*id.*, PageID.14); nonetheless, he seeks monetary damages (*id.*), as well as "class action approval" and "the appointment of counsel to represent the class[,]" (*id.*, PageID.13 ¶ 13.)

### B. Pending Motions

On March 14, 2024, the Court adopted my report and recommendation (ECF No. 39) and denied the motion to dismiss and to transfer venue filed by certain

MDOC Defendants (ECF No. 17). (ECF No. 42.) Currently before the Court are:

- MDOC Defendant Mikel's February 28, 2024 exhaustion-based motion for summary judgment (ECF No. 40), as to which Plaintiff timely filed a response (ECF Nos. 41, 44), and Defendant Mikel filed a reply (ECF No. 48);

- Defendants GPHS, Ouellette, and Sices's motion to dismiss and alternatively for summary judgment based on the failure to exhaust administrative remedies (ECF Nos. 45, 46), as to which Plaintiff filed a response (ECF Nos. 49, 50, 51) and the GPHS Defendants filed a reply (ECF No. 53);[1]

- Plaintiff's motion for substitution (ECF No. 52), as to which the five MDOC Defendants have filed a response (ECF No. 54), and Plaintiff has filed a reply (ECF No. 56).

This report concerns MDOC Defendant Mikel's dispositive motion (ECF No. 40). The other pending motions will be addressed under separate cover.

### C. Standards

MDOC Defendant Mikel brings this motion pursuant to Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light

---

[1] Plaintiff's motion to strike Defendants' reply (ECF No. 53) was denied. (*See* ECF Nos. 55, 57, 58, 59.)

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to

defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

D.  Discussion

1.  **Plaintiff's allegations involving MDOC Defendant Mikel concern the events of May 25, 2022.**

In his pleading, Plaintiff describes Nathan Mikel as an LCF HUM. (ECF No. 1, PageID.4-5.) As best the Court can tell, Plaintiff's only allegation that expressly mentions Mikel is the following:

> On 05-07-2022 Defendant Mikel, after an official response of Defendant Ouellette complaints on 5-26-2022, stated Plaintiff was unwilling to follow the process of Policy Directive 03.04.107, which Defendant [GPHS] employees demand to sign the form.

(ECF No. 1, PageID.10 ¶ 3.) As certain MDOC Defendants have previously noted, "[t]he incident listed as '5-25-2022' on page 8 of the complaint appears to be the same incident referenced on page 10 ¶ 3." (ECF No. 17, PageID.62 n.2.)

5

In a subsequent filing, Plaintiff clarifies that "[t]he date of 5-07-2022 should have read 5-25-2022 . . . ."  (ECF No. 44, PageID.326.)  (*See also* ECF No. 48, PageID.694 n.1.)

### 2. Exhaustion of available administrative remedies

#### a. 42 U.S.C. § 1997e ("Suits by prisoners")

In support of his motion, Mikel relies upon 42 U.S.C. § 1997e(a).  (ECF No. 40, PageID.269.)  This statute provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines."  *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  Nonetheless, "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Ross v. Blake*, 578 U.S. 632, 636 (2016).

#### b. MDOC Prisoner Step III Grievance Report

The MDOC's grievance procedure explains that "[c]omplaints filed by

6

prisoners regarding grievable issues . . . serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ¶ C (effective Mar. 18, 2019). (ECF No. 17-2, PageID.80.)

Mikel argues that the Court "should dismiss [him] from this lawsuit[,]" contending that Plaintiff "did not exhaust any claims" against him arising "out of LCF." (ECF No. 40, PageID.268, 269, 272, 273.)[2] Plaintiff pursued multiple grievances to Step III while at LCF. (ECF No. 40-1, PageID.290-295.) It seems that, at some point, he was placed on "modified access." (*See* MDOC PD 03.02.130 ¶¶ JJ-NN (ECF No. 17-2, PageID.86-87).) "While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator." (*Id.*, ¶¶ MM.) On or about May 10, 2022, Plaintiff wrote to Grievance Coordinator Rohrig to, *inter alia*:

- Mention MDOC PD 03.02.130 ¶¶ MM;

- Seek an explanation for the return of his grievance against a unit officer; and,

- Seek the standard for MDOC PD 03.02.130 ¶ J(1) ("vague, illegible, or contains multiple unrelated issues.").

---

[2] Defendant Mikel and Plaintiff each cite Fed. R. Civ. P. 10(c), with Mikel adopting "the arguments raised in the venue motion[,]" namely his and other MDOC Defendants' August 16, 2023 motion (ECF No. 17), and Plaintiff adopting "the other facts in the venue reply[,]" namely his response (ECF No. 22). (ECF No. 40, PageID.273; ECF No. 44, PageID.324.) The Court denied that motion on March 14, 2024. (ECF No. 42.)

(ECF No. 48-1, PageID.701). The hand-written response is not dated. (ECF No. 48-1, PageID.701.)

Of Plaintiff's multiple Step III LCF grievances, it seems only five were received at Step I in May or June 2022: (i) LCF-22-05-0382-12z (received at Step I on May 11, 2022); (ii) LCF-22-06-0448-28e (received at Step I on June 15, 2022); (iii) LCF-22-06-0458-28E (received at Step I on June 22, 2022); (iv) LCF-22-06-0460-28G (received at Step I on June 22, 2022); and, (v) LCF-22-06-0461-28C (received at Step I on June 22, 2022). (ECF No. 40-1, PageID.290-291.)

> **3. Whether Smith exhausted his available administrative remedies as to his claim(s) against Defendant Mikel?**
>
> **a. Neither LCF-22-04-0354-12z nor LCF-22-05-0382-12z could have grieved Plaintiff's claim(s) against Mikel based on the alleged events of May 25, 2022.**

Mikel narrows the field of Plaintiff's Step III LCF grievances to two – LCF-0354 and LCF-0382 – based on timing, and he further narrows the field to "only one" – LCF-0354 – based on relevance to Plaintiff's claims. (ECF No. 40, PageID.272.) LCF-0354 names Lester, is based on an April 20, 2022 date of incident, and mentions Plaintiff's DNR (Do Not Resuscitate) form (*see* ECF No. 40-1, PageID. 311); and, LCF-0382, names Lester, is based on a May 3, 2022 date of incident, and mentions obtaining 20 copies of CHJ-227, which Plaintiff describes as "Amendment of Health Record Documentation[,]" (ECF No. 40-1, PageID.303).

8

Mikel contends that neither LCF-22-04-0354-12z nor LCF-22-05-0382-12z "name Mikel . . . ."  (ECF No. 40, PageID.272, 274.)  *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); MDOC PD 03.02.130 ¶ S ("Dates, times, places, and names of all those involved in the issue being grieved are to be included.").  (ECF No. 17-2, PageID.83.)  Looking at the "who" for each grievance, Mikel is not named in either LCF-0354 or LCF-0382.

Furthermore, the Court notes that, while LCF-22-04-0354-12z concerned a "Do Not Resuscitate Order (DNR)" order, that grievance concerned an April 20, 2022 incident.  (ECF No. 40-1, PageID.311.)  Thus, neither LCF-0354 nor LCF-0382 could have grieved Plaintiff's claim(s) *against Defendant Mikel based on the alleged events of May 25, 2022*.

> **b.    There is a genuine dispute as to a material fact, namely whether the denial of Plaintiff's May 26, 2022 request while on modified access exhausts Plaintiff's available administrative remedies as to his claim(s) against Mikel related to the events of May 25, 2022.**

Plaintiff responds to Mikel's exhaustion-based motion by:  (i) claiming he filed LCF-22-06-0461-28C against Mikel; and, (ii) contending he attempted to file a grievance while modified access.  (ECF No. 44, PageID.324.)  Plaintiff attaches evidence that, on or about May 26, 2022, he sought to file a grievance against Ouellette and Mikel, citing MDOC PD 03.02.130 ¶¶ MM.  (ECF No. 44,

9

PageID.331-332.) Presumably knowing that "[i]nformation provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)[,]" MDOC PD 03.02.130 ¶ S (ECF No. 17-2, PageID.83), Plaintiff's request mentions a health care request kite to which Mikel responded on May 25, 2022 and further:

- As to <u>who</u>, lists Ouellette and Mikel;

- As to <u>what</u>, lists MDOC PD 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"), MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), and MDOC PD 03.04.107 ("Advance Directives for Health Care");

- As for <u>when</u> and <u>where</u>, lists May 24, 2022 and LCF Health Care;

- As for <u>why</u>, claims, *inter alia*, that: (i) Mikel's kite response "stated that my DNR would not be filed and that I am a 'regular patient here at LRF no matter what provider sees you' and that since I 'do not want to follow the way it has to be completed' I do not have an active DNR, and that the 'provider is not willing to sign at this time due to you wanting to dictate how it needs to be done[;]" and, (ii) Ouellette "stated that my 'no stair' detail was unnecessary and would not be renewed placing me at risk of injury as this was the very reason the Doctor transferred me to LCF[;]" and,

- Seeks various forms of <u>resolution</u>, including that: (i) Ouellette and Mikel "immediately place in [his] prison health record and records office file [his] DNR which clear[ly] has Section 'C' marked that a physician signature is not required, as the instruction sheet violates the signed form[;]" and, (ii) Ouellette "be required at the expiration of the 'no stair' detail [to] renew the Special Accommodation per [MDOC] PD 04.06.160 . . . ."

(ECF No. 44, PageID.331-332; *see also* ECF No. 1, PageID.17.) Handwritten notes

10

dated May 27, 2022 "denied" Plaintiff's request, explaining "new grievance on previously filed issue," "multiple issues," and "extraneous info." (ECF No. 44, PageID.331.)

Plaintiff claims that this is the "relevant attempt to file a grievance while on Modified Access." (ECF No. 44, PageID.325.) To be sure, it is not clear what, if anything, Plaintiff did in response to the rejected request. He likely did not try to secure the grievance form by other means, as "[a] grievance shall be rejected by the Grievance Coordinator if . . . [t]he grievant is on modified access pursuant to Paragraphs JJ through NN and has filed a grievance in violation of those paragraphs[,]" (ECF No. 17-2, PageID.81 ¶ J(3). Also, there is no evidence before the Court that Plaintiff attempted to make another ¶ MM request, this time trying to cure the purported reasons for the May 27, 2022 denial – *i.e.*, endeavoring to make sure it was not "vague" or "illegible" or did not contain "multiple unrelated issues." MDOC PD 03.02.130 ¶ J(1) (ECF No. 17-2, PageID.81) – by limiting the subject of the grievance to Mikel, his alleged May 25, 2022 actions, and MDOC PD 03.04.107 ("Advance Directives for Health Care").

Nonetheless, in his reply, Plaintiff mentions "the propriety of the rejection . . . [,]" contending that "[a] lack of argument on the propriety of the rejection constitutes waiver of [Defendant Mikel's] exhaustion argument." (ECF No. 44, PageID.323, 325.) *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) ("We consider

11

issues not fully developed and argued to be waived."). To the extent Plaintiff's propriety argument concerns the denial of his May 26, 2022 MDOC PD 03.02.130 ¶ MM request for a Step I grievance form (*see* ECF No. 44, PageID.323-326), Mikel's reply does not address Plaintiff's modified access argument. (*See* ECF No. 48, PageID.694-695.) *Crump v. Prelesnik*, No. 1:10-CV-353, 2011 WL 3665042, at *4 (W.D. Mich. June 6, 2011) (Brenneman, Jr., M.J.) ("Defendants did not reply to plaintiff's contention that he exhausted his claims while on modified access by sending kites requesting grievance forms nor have they provided evidence to establish that plaintiff did not request grievances (e.g., the list of grievance requests recorded by the grievance coordinator as required by PD 03.02.130 ¶ KK). Genuine issues of material fact exist with respect to exhaustion."), *report and recommendation adopted*, No. 1:10-CV-353, 2011 WL 3665135 (W.D. Mich. Aug. 19, 2011).[3]

In addition to Mikel's failure to address Plaintiff's modified access argument, at least one Court has stated: "Given that PD 03.02.130 does not establish any

---

[3] *Compare Jennings v. Karnitz*, No. 1:12-CV-175, 2013 WL 791433, at *4 (W.D. Mich. Feb. 4, 2013) (Brenneman, Jr., M.J.) ("defendants have presented evidence that petitioner has failed to properly exhaust any grievances. Plaintiff has failed to present an affidavit or other evidence that, while on modified access, he requested a grievance form from defendant Minnerick for an issue that was grievable, met the criteria for filing a grievance as set forth in MDOC Policy Directive, 03.02.130 ¶ KK, or exhausted a new grievance under the procedure outlined in Walker, 128 Fed. Appx. at 446–47."), *report and recommendation adopted*, No. 1:12-CV-175, 2013 WL 791233 (W.D. Mich. Mar. 4, 2013).

administrative procedure for a prisoner on modified access to appeal after a grievance coordinator has denied the prisoner's request for a Step I grievance form on a non-frivolous complaint, the Sixth Circuit has held that a Michigan prisoner who has been denied a Step I grievance form under such circumstances has exhausted his available administrative remedies." *Reeves v. Corr. Med. Servs.*, No. 08-13776, 2009 WL 3876292, at *6 (E.D. Mich. Nov. 17, 2009) (Cleland, J.). Although the version of MDOC PD 03.02.130 at issue in *Reeves* was effective March 5, 2007, *see Reeves*, 2009 WL 3876292, at *5, the same appears to be true of the March 18, 2019 version at issue in this lawsuit. Indeed, ¶ KK of the March 5, 2007 version discussed in *Reeves* appears to be similar to ¶ MM of the March 18, 2019 version of MDOC PD 03.02.130 applicable in the instant case. (*See* ECF No. 17-2, PageID.87.)

Considering Plaintiff's evidence, namely his May 26, 2022 request and the May 27, 2022 denial (ECF No. 44, PageID.331-332), Plaintiff's apparent challenge to the propriety of the response (ECF No. 44, PageID.323, 325), Defendant Mikel's failure to reply to Plaintiff's modified access argument (*see* ECF No. 48), and the apparent absence of a mechanism to appeal a denial under MDOC PD 03.02.130 ¶ M (*see* ECF No. 17-2), there is a genuine dispute as to a material fact, namely whether the denial of Plaintiff's May 26, 2022 request while on modified access exhausts Plaintiff's available administrative remedies as to his claim(s) against Mikel related

13

to the events of May 25, 2022.

### c. LCF-22-06-0461-28C does not concern Plaintiff's claim(s) against MDOC Defendant Mikel based on the alleged events of May 25, 2022.

Plaintiff also points to LCF-22-06-0461-28C, which names Mikel (as well as Ouellette and Hill) and is based on June 17, 2022 incident, seemingly Mikel's June 17, 2022 Health Care Response to Plaintiff's June 15, 2022 kite. (*See* ECF No. 44, PageID.330; ECF No. 48-1, PageID.698-700, 702.) On June 22, 2022, the grievance was rejected as "vague, multiple issues[.]" (ECF No. 44, PageID.330; ECF No. 48-1, PageID.702.) (*See also* MDOC PD 03.02.130 ¶ J(1) [ECF No. 17-2, PageID.81].) In July 2022, the rejection was upheld at Step II. (ECF No. 48-1, PageID.699.) On July 26, 2022, the rejection was upheld at Step III. (*Id.*, PageID.698.)

Plaintiff claims that LCF-22-06-0461-28c is "the relevant grievance . . . ." (ECF No. 44, PageID.325.) In his reply, Mikel offers two reasons why LCF-22-06-0461-28c "does not exhaust Smith's claims against HUM Mikel . . . ." (ECF No. 48, PageID.695.) First, Mikel contends:

> . . . although LCF-461 named HUM Mikel at Step I, the subject of LCF-461 was not the alleged refusal to process or denial of Smith's DNR request. . . . Rather, the subject of LCF-461 was the June 17, 2022, denial by HUM Mikel (and his medical providers) of his request for a rollator to accommodate his medical condition.

(ECF No. 48, PageID.695 (citing ECF No. 48-1).) Indeed, LCF-22-06-0461-28c:

14

(i) lists June 17, 2022 as the "Date of Incident" and the "When;" (ii) explains that HUM Mikel "sent a Health Care Response on 06/17/202 for a kite [Plaintiff] sent on 06/15/2022[,]" and that "[n]o resolution was made[;]" (iii) mentions his demyelinating disease and cerebral palsy; (iv) contends Mikel and Ouellette "are denying [him] a rollator . . . [;]" and, (v) also contends Mikel "falsified medical records stating that" Ouellette or Hill "discussed a rollator." (ECF No. 44, PageID.330; ECF No. 48-1, PageID.702.) In sum, although LCF-0461 names Mikel, it does not concern the alleged events of May 25, 2022, which form the basis of Plaintiff's claim(s) against Mikel. (*See* ECF No. 1, PageID.10 ¶ 3; *see also* ECF No. 17, PageID.62 n.2; ECF No. 44, PageID.326; 48, PageID.694 n.1.) Thus, LCF-0461 cannot exhaust Plaintiff's available administrative remedies as to his claim(s) against Mikel.

Second, Mikel contends that "LCF-461 was rejected at Step I, and the rejection was affirmed through Step III." (ECF No. 48, PageID.695 (citing ECF No. 48-1, PageID.698-699, 702).) In his reply, Plaintiff seems to challenge this rejection, contending that "[a] lack of argument on the propriety of the rejection constitutes waiver of Defendant Mikel's exhaustion argument." (ECF No. 44, PageID.323.) *See Brindley*, 61 F.3d at 509. Yet, to the extent Plaintiff's propriety argument concerns the rejections of LCF-0461 at Step I, Step II and Step III (*see* ECF No. 44, PageID.323-326), the Court need not address it. As noted above,

15

based on LCF-0461's subject matter, it cannot exhaust Plaintiff's available administrative remedies as to his claim(s) against Mikel based on the alleged events of May 25, 2022.

### 4. Carolyn Nelson's June 27, 2023 Affidavit for Step III Grievances

In his response, Plaintiff asks the Court to strike Carolyn Nelson's June 27, 2023 affidavit (ECF No. 40-1, PageID.279-280), which the MDOC Defendants also attach to the August 16, 2023 motion (ECF No. 17-3, PageID.89-90). (ECF No. 44, PageID.327.) Plaintiff accurately notes that: (a) the affidavit attached to the instant February 28, 2024 motion is a "replica" of the one attached to the prior motion to dismiss; (b) the notary's commission expired on August 24, 2023; and, (c) the attached Step III grievance reports highlight and mark with an "X" different grievances. (ECF No. 44, PageID.327.)

The Court understands how such observations – *i.e.*, the filing of a June 27, 2023 affidavit on February 28, 2024 (by which point the notary's commission had expired) or differences in the markings on the reports attached to identical grievances – might seem problematic to Plaintiff. Nonetheless, these differences do not call into question the accuracy of the 19-page MDOC Prisoner Step III Grievance Report dated June 23, 2023, which is attached to each filing. (*Compare*, ECF No. 17-3, PageID.91-109; *with*, ECF No. 40-1, PageID.281-299.) As for the differences in the highlighted and marked grievances on each attached report, the

16

Court acknowledges Nelson's statement: "Following the report is a true and correct copy of the underlying grievance documentation received at Step III for the grievances referenced in the report that are highlighted and marked with an 'X.'" (ECF No. 17-3, PageID.89; ECF No. 40-1, PageID.279.) Pointing to the attachment to the instant motion (*see* ECF No. 40-1, PageID.279), Plaintiff contends Nelson "did not have 'personal knowledge' of 'the grievances referenced in the report that are highlighted and marked with an 'X'.'" (ECF No. 44, PageID.327.) While the differences in grievances marked and highlighted makes sense to the Court – *i.e.*, exhaustion in the prior motion to dismiss concerned STF, while exhaustion in the instant motion to dismiss concerns LCF – Defendants might have avoided this "dating" predicament by having Nelson sign an updated affidavit. Nonetheless, on the record before it, the Court has no reason to doubt the validity of the attached grievance records; accordingly, it will not strike the affidavit and attachments in question (ECF No. 40-1). And as to the expiration of the notary's commission, it was valid at the time the notarized service was actually provided; that is all that matters.

### D. Conclusion

As discussed in Section I.D.1, Plaintiff's allegations involving MDOC Defendant Mikel concern the events of May 25, 2022 (*see* ECF No. 1, ¶ 13). Based on the evidence before the Court, neither LCF-22-04-0354-12z, nor LCF-22-05-

0382-12z, nor LCF-22-06-0461-28C operate to exhaust Plaintiff's available administrative remedies as to his claim(s) against Mikel; however, there is a genuine dispute as to a material fact, namely whether the denial of Plaintiff's May 26, 2022 request while on modified access exhausts Plaintiff's available administrative remedies as to his claim(s) against Mikel related to the events of May 25, 2022. (*See* Section II.D.3.) As a result, MDOC Defendant Mikel is not entitled to dismissal of the claim(s) against him arising out of the alleged events of May 25, 2022. Accordingly, the Court should **DENY** MDOC Defendant Mikel's exhaustion-based motion for summary judgment (ECF No. 40).

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 29, 2024

Anthony P. Patti
United States Magistrate Judge