## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRISTOPHER CARSON
SMITH (#233282)
                Plaintiff,                Case No. 2:23-cv-11067

                                        District Judge Jonathan J.C. Grey

v.                                  Magistrate Judge Anthony P. Patti

CHAD E. MARKWELL, *et al.*,

        Defendants.

_____/

## ORDER DECLINING TO STAY CASE

## I.    INTRODUCTION

This is a prison civil rights case under 42 U.S.C. § 1983. Plaintiff Christopher Carson Smith seeks to uphold his right to sign a "Prisoner Advance Directive – Do Not Resuscitate Order" without undue government interference. He is currently located at the Michigan Department of Corrections (MDOC) Cooper Street Correctional Facility (JCS). (ECF No. 72, PageID.866.)

Alleging violations of the First Amendment, the Fourteenth Amendment, and 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of institutionalized persons"), Plaintiff sues eight Defendants: (1) Chad E. Markwell, an STF Chaplain;  (2) Magen Oaks, an STF Health Unit Manager (HUM); (3) Nathan Mikel, a Lakeland Correctional Facility (LCF) HUM; (4) Connie Lester, an LCF

1

Registered Health Information Technician (RHIT); (5) Heidi Washington, the MDOC Director; (6) Grand Prairie Healthcare Services (GPHS); (7) GPHS employee Peter Sices, M.D., located at STF; and, (8) GPHS employee Margaret Ouellette, P.A., located at LCF (ECF No. 1, PageID.2-6, 14.)  The Case has been referred to me for pretrial purposes.  (ECF No. 7.)

The State of Michigan contracted with Wellpath and Grand Prairie Healthcare Services, P.C.[1] to provide healthcare services to incarcerated individuals.  In this and many other prisoner civil rights cases throughout the district, Wellpath or individuals employed by it or one of its affiliates have recently filed documents to inform the Court that Wellpath has filed a voluntary bankruptcy petition under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas.  (ECF No. 75).  Under 11 U.S.C. § 362, all proceedings against the debtor, *i.e.*, Wellpath, are automatically stayed; however, the automatic stay does not apply to Wellpath employees nor unrelated co-defendants.

On January 2, 2024, Defendant GPHS filed a statement of disclosure of corporate affiliations and financial interest, but did not list Wellpath as a subsidiary or affiliate.  (ECF No. 34.)  However, in the reply brief to its motion for summary judgment, GPHS sweepingly states that:  "[A] suit against [GPHS] is in essence a

---

[1]https://wellpathcare.com/2021/10/01/grand-prairie-healthcare-services-in-coordination-with-wellpath-to-partner-as-the-new-healthcare-provider-for-the-michigan-department-of-corrections/.

suit against Wellpath, LLC. . . . [GPHS] is [Wellpath's] subcontractor.  Thus, for

all intents and purposes[,] all [GPHS] employees are Wellpath employees."  (ECF

No. 53, PageID.740.)

## II.    **BACKGROUND**

Defendants GPHS, Peter Sices, and Margaret Oellettte, have filed a "Notice

of Stay," and have provided the Court with an order from the bankruptcy court

regarding enforcement of the automatic stay.  (ECF No. 75-1).

In relevant part, the order states that it is "extending the (i) automatic stay

under section 362 of the Bankruptcy Code."  (ECF No. 75-1, PageID.894).  The

order states that it shall "operate as an interim stay pending further order by the

Court, applicable to all persons (and all those acting for or on their behalf) and all

governmental unites (and all those acting for or on their behalf) of:

> a. the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against any Professional Corporation that (i) was or could have been commenced before the Petition Date, or an act to recover a claim against any Professional Corporation that arose prior to the Petition Date, and (ii) may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

> b. the enforcement, against any Professional Corporation or against property of any Professional Corporation, of a judgment (i) obtained before the Petition Date and (ii) which triggered the Debtors' indemnity obligations to

such Professional Corporation under the applicable Professional Corporation
Contract or such Professional Corporations' organizational documents;

c. any act to obtain possession of, or exercise control over, property of any
Professional Corporation that may trigger the Debtors' indemnity
obligations to such Professional Corporation under the applicable
Professional Corporation Contract or such Professional Corporations'
organizational documents;

d. any act to create, perfect, or enforce any lien against property of any
Professional Corporation to the extent that (i) such lien secures a claim that
arose before the Petition Date and (ii) it triggered the Debtors' indemnity
obligations to such Professional Corporation under the applicable
Professional Corporation Contract or such Professional Corporations'
organizational documents; and

e. any act to collect, assess, or recover a claim against any Professional
Corporation that (i) arose before the Petition Date and (ii) may trigger the
Debtors' indemnity obligations to such Professional Corporation under
the applicable Professional Corporation Contract or such Professional
Corporations' organizational documents.

(ECF No. 75-1, PageID.896-897).

The moving parties contend that this stay applies to them as non-debtors

covered by the provisions of the bankruptcy court's rulings and that this action

should therefore be stayed pending further order of the Court.  (ECF No. 75.)

## III.    <u>**DISCUSSION**</u>

Two magistrate judges in this district have considered the issue of whether

the Wellpath bankruptcy stay should be extended, as contemplated by the

bankruptcy court and as advocated by Defendants.  Applying the same reasoning,

both magistrate judges have concluded that the stay should not be extended to the

non-debtor defendants. *See, e.g., Lentz v. Michigan Dep't of Corr.*, No. 2:24-cv-
10198, 2024 WL 4874213, at *2–3 (E.D. Mich. Nov. 22, 2024) (Altman, M.J.);
*Bowser v. Watson*, No. 2:23-cv-10568, 2024 WL 4989327, at *2 (E.D. Mich. Nov.
20, 2024) (Morris, M.J.). Conversely, the Northern District of Ohio has recently
disagreed with the decisions of this district and concluded that the bankruptcy
court's order should operate to stay actions against the implicated non-debtors. *See
McLemore v. Cnty. of Mahoning,* No. 4:23-CV-1144, 2024 WL 5247847, at *2
(N.D. Ohio Dec. 30, 2024).

Having considered the competing decisions, I agree with my colleagues and
find that, at this point in the litigation, Defendants have not shown that the stay
should be extended to non-debtors. This decision, however, is based on the
materials currently before the Court and is also based in large part on an effort to
maintain consistency within this district. The Court recognizes that a hearing is
currently set before the bankruptcy court for January 14, 2025 to deal with multiple
creditors' objections that have been filed related this very issue and, should the
landscape materially change, Defendants can bring a renewed effort, by way of
motion, to further inform the Court and to extend the stay or otherwise effectuate
any clarifying rulings of the bankruptcy court. In the meantime, however, the
Court joins the other judges in this district who have declined to extend the stay to

non-debtors, for the reasons articulated by those judges and as reinforced below.

First, the Court notes that it has "jurisdiction concurrent with the originating bankruptcy court to determine the applicability of the bankruptcy court's automatic stay." *Baechel v. Republic Storage Sys., LLC*, No. 5:16-CV-1403, 2018 WL 1243424, at *2 (N.D. Ohio Mar. 9, 2018).  Over thirty years ago, the Sixth Circuit squarely addressed the issue of whether a bankruptcy court can stay proceedings against non-debtor defendants under 11 U.S.C. § 362.  *Patton v. Beardon*, 8 F.3d 343 (6th Cir. 1993).  The Sixth Circuit acknowledged that "[c]learly, section 362(a)(1) stays any actions against the *debtor*." *Id.* at 349 (emphasis in original).[2] In other words,

> [a]t the commencement of a case, a stay arises by operation of law pursuant to 11 U.S.C. § 362(a).  Its effect is to impose a wide-ranging prohibition on all activity outside the bankruptcy forum to collect prepetition debts from the debtor or to assert or enforce claims against the debtor's prepetition property or estate property.  But, by its express terms, the only entity to which the § 362 stay applies is the debtor.  As such, it may not be extended to third parties such as the [d]ebtor's co-guarantors.

---

[2] A decade earlier, the Sixth Circuit noted that "[i]t is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor." *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir. 1983) (collecting cases).  The Fifth Circuit (where the bankruptcy court sits) has long stated similarly, explaining that "[b]y its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (internal footnote omitted).

*In re Nat'l Staffing Servs., LLC*, 338 B.R. 35, 36–37 (Bankr. N.D. Ohio 2005).

In *Patton*, the Sixth Circuit also acknowledged that "[s]ome courts have held that the debtor's stay may be extended to non-bankrupt parties in unusual circumstances."  8 F.3d at 349 (cleaned up).  Examples of unusual circumstances "include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization."  *Id.*  Importantly, the Sixth Circuit cautioned that "such extensions, although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate."  *Id.*  The Sixth Circuit explained that "[e]ven if [it was] to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105."  *Id.*; *see also In re Nat'l Staffing Servs.*, 338 B.R. at 37 ("The authority to take this action, however, is found not in § 362; rather, it is derived from the bankruptcy court's equity jurisdiction as contained in 11 U.S.C. § 105(a).").

Critically, the bankruptcy court here did not mention 11 U.S.C. § 105(a) nor the phrase "preliminary injunction."  Further, the bankruptcy court did not set forth the preliminary-injunction factors or include any analysis on the subject.  Both the Fifth Circuit and the Sixth Circuit require a court to consider the following four factors when faced with a request for a preliminary injunction: (1) likelihood of

success on the merits, (2) danger of irreparable injury, (3) whether the potential

irreparable injury outweighs the harm to the non-debtors, and (4) the public

interest.  *See, e.g.*, *In re Sahene Constr., LLC*, No. 23-10096, 2023 WL 3010073, at

*3 (Bankr. M.D. La. Apr. 19, 2023) (analyzing the four factors following a request

to stay civil litigation as to non-debtor defendants); *In re Nat. Century Fin. Enters.,*

*Inc.*, 423 F.3d 567, 579 (6th Cir. 2005) (explaining that "only when the bankruptcy

court enjoins an action under § 105(a) must it consider the four preliminary

injunction factors, and apply a standard of clear and convincing evidence").

Under circumstances similar to those currently before the Court, another

district court declined to stay a case at the request of the non-debtor defendants,

explaining: "It does not appear from the record in this case that such an order has

been obtained from the bankruptcy court before which [the d]ebtor [d]efendant's

bankruptcy is pending.  The party seeking the section 105 stay bears the burden of

requesting it and the persuasion on the merits." *Gulf Coast Hotel-Motel Ass'n v.*

*Mississippi Gulf Coast Golf Course Ass'n*, No. 108CV1430HSOJMR, 2010 WL

972248, at *2 (S.D. Miss. Mar. 12, 2010) (cleaned up).  The same is true here.  No

order issuing a preliminary injunction has been provided to this Court and neither

this Court nor the bankruptcy court has the authority to otherwise "extend" the

automatic stay to non-debtor defendants.

## IV.    __CONCLUSION__

For the reasons stated above, this case will proceed uninterrupted, pending any further development or definitive clarification of this issue in the bankruptcy court.

**IT IS SO ORDERED.**

Date: January 13, 2025

_____
Anthony P. Patti
United States Magistrate Judge